UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Christopher DiStasio, *on his own behalf and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>Edible Arrangments, LLC,<br><br>Defendant. | Civil Action No.: _____<br><br><br><br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

For this Class Action Complaint, the Plaintiff, Christopher DiStasio, by and through his undersigned counsel, pleading on his own behalf and on behalf of others similarly situated, states as follows:

## INTRODUCTION

1. Plaintiff, Christopher DiStasio ("Plaintiff"), brings this class action for damages, injunctive relief, and declaratory relief from the illegal actions of Edible Arrangments, LLC ("EA" or "Defendant"). Defendant sent unauthorized automated text messages to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA").

2. Wireless spam is a growing problem in the United States. In April 2012, the Pew Research Center found that 69% of texters reported receiving unwanted spam text messages, while 25% reported receiving spam texts weekly. http://www.pewinternet.org/fact-sheets/mobile-technology-fact-sheet/ (last visited June 4, 2015); *see also* Nicole Perlroth, Spam Invades a Last Refuge, the Cellphone, N.Y.Times, April 8, 2012, at A1 ("In the United States, consumers received roughly 4.5 billion spam texts [in 2011], more than double the 2.2 billion received in 2009 . . . .").

3. Defendant is the franchisor of over 1,200 worldwide stores, over 1,000 in the United States, which sell fruit arrangements and bouquets.

4. In an effort to market its franchisees' products, EA established an automated text messaging program which offered discounts to consumers via automated text messages to their cellular telephones.

5. EA lacked the prior express written consent required to send consumers automated text messages under the TCPA. Plaintiff is one such consumer, and sues EA for its TCPA violations individually and on behalf of all others similarly situated.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740, 751-53 (2012).

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Plaintiff resides in this District and because a substantial part of the events giving rise to the claim occurred in this District.

## PARTIES

8. Plaintiff is, and at all times mentioned herein was, an adult individual residing in Florida.

9. EA is a Connecticut business entity with a business address of 95 Barnes Road, Wallingford, CT 06492.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

10. The TCPA regulates, among other things, the use of automated telephone dialing systems ("ATDS").

11. Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS to a

cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

      12.      47 U.S.C. § 227(a)(1) defines an ATDS as equipment having the capacity–

          (A)     to store or produce telephone numbers to be called, using a random or sequential number generator; and

          (B)     to dial such numbers.

      13.      In 2015, the FCC reaffirmed its long standing position on the definition of ATDS:

> Congress intended a broad definition of autodialer, and . . . the Commission has already twice addressed the issue in 2003 and 2008, stating that autodialers need only have the "capacity" to dial random and sequential numbers, rather than the "present ability" to do so. Hence, any equipment that has the requisite "capacity" is an autodialer and is therefore subject to the TCPA.

*FCC Declaratory Ruling and Order*, FCC 15-72, ¶ 15 (July 10, 2015).

      14.      "Prior express written consent" is required before making automated telemarketing calls, meaning there must be a written agreement, signed by the person receiving the call or text, with a "clear and conspicuous disclosure" that specifically authorizes the seller to send telemarketing communications using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200; *see also FCC Declaratory Ruling and Order*, FCC 15-72, ¶ 98 (July 10, 2015).

      15.      The FCC has clarified that text messages qualify as "calls" under the TCPA:

> We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the party is charged." **This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.**

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,

3

Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003) (emphasis supplied); *see Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013).

### ALLEGATIONS APPLICABLE TO PLAINTIFF

16.     Within the last four years, Defendant began placing text messages to Plaintiff's cellular telephone number, 954-xxx-5502.

17.     Defendant marketed its franchisees' products in the text messages and thus constituted 'telemarketing.'  For instance, one text message read: "Edible: Save 20% on your Easter basket!  The perfect dessert for kids & the whole family – order today!"

18.     The text messages received by Plaintiff were fully automated.  The content of the messages received by Plaintiff was repetitive, template-based and impersonal to Plaintiff.

19.     The text messages sent to Plaintiff's cellular phone by Defendant were made with an ATDS as defined by 47 U.S.C. § 227(a)(1) and the FCC.  Defendant's system placed the texts automatically, using a list or database of telephone numbers and dialing without human intervention.

20.     Moreover, the ATDS had the capacity to store or produce telephone numbers to be texted, using a random or sequential number generator, or from a database of numbers, and to text thousands of such numbers without human intervention.

21.     EA obtained Plaintiff's telephone number through unknown means.  Plaintiff has never been a customer of EA and has never opted in or agreed in any way to receive automated text messages from EA.

22.     The telephone number messaged by Defendant was assigned to a cellular telephone service for which Plaintiff incurs charges for incoming messages pursuant to 47 U.S.C. § 227(b)(1).

23. Defendant did not place the text messages for an emergency purpose.

24. The text messages have annoyed and harassed the Plaintiff and invaded his privacy by sending unwanted messages to his cellular device.

## CLASS ACTION ALLEGATIONS

### A. The Class

25. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all others similarly situated.

26. Plaintiff represents, and is a member of the following class (the "Class"):

**All persons within the United States who did not provide Defendant clear and conspicuous prior express written consent to send automated telemarketing text messages and who received one or more automated telemarketing text messages, from or on behalf of Defendant, to said person's cellular telephone, made through the use of any automatic telephone dialing system within the four years prior to the filing of the Complaint.**

27. Defendant and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the class members number in the several thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

### B. Numerosity

28. Upon information and belief, Defendant sent text messages to cellular telephone numbers of thousands of consumers throughout the United States without their prior express written consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

29. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

### C. Common Questions of Law and Fact

30. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. These questions include:

   a. Whether Defendant sent non-emergency text messages to Plaintiff and Class members' cellular telephones using an ATDS;

   b. Whether Defendant can meet its burden of showing it obtained prior express written consent to send each message;

   c. Whether Defendant's conduct was knowing and/or willful;

   d. Whether Defendant is liable for damages, and the amount of such damages; and

   e. Whether Defendant should be enjoined from such conduct in the future.

31. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely send automated text messages to telephone numbers assigned to cellular telephone services without prior express written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### D. Typicality

32. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### E. Protecting the Interests of the Class Members

33. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor his counsel has any interests which might cause them not to

vigorously pursue this action.

**F. Proceeding Via Class Action is Superior and Advisable**

34.     A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of Class members in individually controlling the prosecutions of separate claims against Defendant is small because it is not economically feasible for Class members to bring individual actions.

35.     Management of this class action is unlikely to present any difficulties.  Several courts have certified classes in TCPA actions.  These cases include, but are not limited to: *Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617 (N.D. Ill. 2011); *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892 (N.D. Ill., May 27, 2008); *CE Design Ltd. V. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal., May 29, 2012).

**COUNT I**
**Violations of the Telephone Consumer Protection Act,**
**47 U.S.C. § 227,** *et seq.*

36.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

37.     Defendant sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express written consent.

38.     Each of the aforementioned messages by Defendant constitutes a violation of the TCPA.

39.     Plaintiff and the Class are entitled to an award of $500.00 in statutory damages for each message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

40.     Additionally, Plaintiff and the Class are entitled to and seek injunctive relief

prohibiting such conduct by Defendant in the future.

41. Further, Plaintiff and the Class are entitled to and seek a declaration from Defendant that:

- Defendant violated the TCPA;
- Defendant used an ATDS to send telemarketing text messages to consumers; and
- Defendant placed calls to the Plaintiff and the Classes without prior express consent.

### COUNT II
### Knowing and/or Willful Violations of the
### Telephone Consumer Protection Act,
### 47 U.S.C. § 227, *et seq.*

42. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

43. Defendant knowingly and/or willfully sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express written consent.

44. Each of the aforementioned messages by Defendant constitutes a knowing and/or willful violation of the TCPA.

45. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff and the Class are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

46. Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

47. Further, Plaintiff and the Class are entitled to and seek a declaration from Defendant that:

- Defendant knowingly and/or willfully violated the TCPA;

- Defendant knowingly and/or willfully used an ATDS to message Plaintiff and the Classes;

- Defendant knowingly and/or willfully messaged Plaintiff and the Class with telemarketing text messages knowing it did not have their prior express written consent to do so;

- It is Defendant's practice and history to place automated telephone calls to consumers without their prior express consent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant Plaintiff and the Class the following relief against Defendant as follows:

1. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;
2. Declaratory relief as stated;
3. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);
4. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);
5. An award of attorneys' fees and costs to counsel for Plaintiff and the Class; and
6. Such other relief as the Court deems just and proper.

## TRIAL BY JURY DEMANDED ON ALL COUNTS

Dated: April 5, 2016

Respectfully submitted,

By: */s/ Sergei Lemberg*
Sergei Lemberg
LEMBERG LAW, LLC

43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile:  (203) 653-3424
*Attorneys for Plaintiff*