# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER DISTASIO, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EDIBLE ARRANGEMENTS, LLC,<br><br>Defendant. | Case No. 3:16-cv-00538-DJS |

**DEFENDANT EDIBLE ARRANGEMENTS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO STAY PENDING THE SUPREME COURT'S DECISION IN *FACEBOOK, INC. V. DUGUID***

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| **I.** | INTRODUCTION ................................................................................................ 2 | |
| **II.** | RELEVANT FACTS AND PROCEDURAL HISTORY ................................... 3 | |
| **III.** | LEGAL ARGUMENT......................................................................................... 6 | |
| | **A.** The Definition of ATDS Is Unsettled Nationwide. ................................. 6 | |
| | **B.** The Supreme Court Will Imminently Rule on the Scope of an ATDS. ................. 8 | |
| | **C.** The Forthcoming Supreme Court Ruling Defining the Scope of an ATDS Could Dispose of Plaintiff's Entire Action. .............................................. 9 | |
| | **D.** If the Court Denies Edible's Motion for Judgment on the Pleadings or Motion to Transfer, It Should Stay the Case Pending the Supreme Court's Forthcoming Ruling on the ATDS Issue. ................................. 9 | |
| | **1.** Courts Routinely Stay Rulings Pending Guidance from the Supreme Court. ....................................................................................................... 10 | |
| | **2.** All Relevant Factors Weigh in Favor of a Stay Pending *Facebook*. ........ 11 | |
| **IV.** | CONCLUSION................................................................................................. 16 | |

**I.     INTRODUCTION**

As explained in Edible Arrangement LLC's ("Edible") concurrently-filed motion to transfer, this Court should exercise its discretion and transfer this case under 28 U.S.C. § 1404(a) to the Northern District of Georgia where Edible, key non-parties, and the vast majority of witnesses are located; or, alternatively, to the Southern District of Florida, where the "harm" allegedly occurred and where key witnesses to that "harm" are located.  If the Court does not transfer the case, then the Court should dismiss the Complaint as explained in Edible's motion for judgment on the pleadings, because the Court lacks subject matter jurisdiction to enforce the Telephone Consumer Protection Act's ("TCPA") automated-call ban against Edible during the period it was deemed unconstitutional by the Supreme Court last month in *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020) (hereinafter, *AAPC*).

If the Court disagrees with either of these motions, however, then it should reinstate the stay of this case because Plaintiff's putative class action hinges on how to interpret the TCPA's definition of automatic telephone dialing system ("ATDS").  Following the D.C. Circuit's seminal decision in *ACA International v. Federal Communications Commission* ("*ACA Int'l*"), 885 F.3d 687 (D.C. Cir. 2018)—which vacated the Federal Communications Commission's ("FCC") overbroad interpretation of ATDS—courts across the country have reached different conclusions on that question, leading to a Circuit split.  Recognizing this important and unsettled issue, this Court previously stayed this case pending a ruling from the Federal Communications Commission and then the Second Circuit, pending its ruling on what an ATDS is in *Duran v. La Boom Disco*, 955 F.3d 279 (2nd Cir. 2020).

Now the <u>highest court</u> is reviewing that exact issue.  As a result, the definition in the Second Circuit is again subject to change.  And, consistent with its prior rulings, this Court should reinstate the stay.  On July 9, 2020, the Supreme Court granted certiorari in *Facebook, Inc. v. Duguid*, No.

2

19-511 ("*Facebook*") and is now set to answer what type of equipment qualifies as an ATDS, with the petitioner's opening brief due before Labor Day. Although there is no way to predict the ruling with certainty, the textualist Court will likely follow the Third, Seventh, and Eleventh Circuits in holding that the TCPA means what it says: for equipment to qualify as an "ATDS," it must employ a "random or sequential number generator."

If the Supreme Court follows this approach, Plaintiff's entire ATDS class action will be eliminated. That is because the system at issue did not employ a random or sequential number generator. And even if the Supreme Court does not rule in Edible's favor, the ruling will directly affect this case, providing substantial guidance and clarity to the Court and the parties, streamlining fact and expert discovery, eliminating the need for other proceedings (such as briefing and discovery disputes), and encouraging settlement discussions. As a result, a stay pending the Supreme Court's ATDS decision in *Facebook*, like the previous stay pending the Second Circuit's ATDS decision in *Duran*—which this Court properly issued—would not cause injustice or hardship to any party and would instead conserve the resources of the Court, the parties, and third parties—precious resources during a recession and pandemic.

Accordingly, should the Court decline to grant Edible's motion to transfer and motion for judgment on the pleadings, Edible respectfully requests the Court stay this case pending the Supreme Court's decision in *Facebook*.[1]

## II.   RELEVANT FACTS AND PROCEDURAL HISTORY

In this putative TCPA class action, Plaintiff alleges that Edible sent messages to his

---

[1] Because the concurrently-filed motion for judgment on the pleadings seeks dismissal on the basis of subject-matter jurisdiction and personal jurisdiction, the Court should decide this threshold jurisdictional argument before deciding this motion to stay. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) ("Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.").

3

cellular phone using an ATDS without his consent in March and April 2016.  Dkt. 1, ¶ 19-20; Dkt. 19-2.  Plaintiff alleges that Edible used a system "using a list or database of telephone numbers and dialing without human intervention" that had the "capacity to store or produce telephone numbers to be texted, using a random or sequential number generator, or from a database of numbers, and to text thousands of such numbers without human intervention."  Dkt. 1, ¶¶ 19-20.  Based on this single claim, Plaintiff seeks to certify a class of persons who, among other things, received messages sent using an automated telephone dialing system.  Dkt. 1, ¶ 26.  Edible answered, denying violating the TCPA or placing any calls with an ATDS.  Dkt. 24. Discovery subsequently revealed Plaintiff requested text messages from Edible.  Dkt. 40-2, p. 8.

This Court stayed this action pending, among other things, the Second Circuit Court of Appeals' then-forthcoming ruling on what constitutes an "ATDS" in *Duran*.  *See* Dkt. 106.  After the Second Circuit issued its decision in *Duran*, widening the Circuit split on the definition of ATDS, this Court lifted the stay in this action.  *See* 955 F.3d 279, 281 n.5 (2d Cir. 2020); Dkt. 109.  Since the lift of stay, the parties met and conferred on various discovery disputes, but no additional written discovery has been exchanged and no depositions have proceeded.  In the process of confirming witnesses and documents, it became clear that the majority are located in Georgia and Florida and that litigating this case elsewhere would involve substantial burden to the parties, non-parties, and the judicial system alike.  Accordingly, Edible filed a motion to transfer, requesting that this Court exercise its discretion and transfer this case under 28 U.S.C. § 1404(a) to the Northern District of Georgia where Edible, key non-parties, and the vast majority of witnesses are located; or, alternatively, to the Southern District of Florida, where the "harm" allegedly occurred and where key witnesses to that "harm" are located.

On July 6, 2020, the Supreme Court issued its decision in *AAPC*, saving the TCPA by

4

severing the government debt exception. *AAPC*, 140 S. Ct. at 2352. However, a majority of Justices held that the ATDS restriction was unconstitutional while it contained the exception (*i.e.*, pre-severance). *See id*. at at 2352. Correctly predicting that the Supreme Court would deem the automated call ban unconstitutional, Edible previously requested a stay of this case pending the opinion in *AAPC*. Dkt. 108, pp. 4-9. Because the calls at issue in this case occurred during the period during which the restriction was unconstitutional—between 2015 and July 6, 2020 (*see* Dkt. 19-2)—Edible cannot be held liable for the calls in this case. *See*, *e.g.*, *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017) (defendant cannot be held liable under an unconstitutional law regardless of how a legislature "might subsequently cure the [constitutional] infirmity"). Accordingly, Edible has also moved for judgment on the pleadings as to Plaintiff's entire action, though technically that issue should be resolved once this matter is transferred.

Should the Court decline to transfer or dismiss this case for lack of subject-matter jurisdiction, however, the Court should stay this case pending the Supreme Court's forthcoming decision in *Facebook*. In that case, on July 9, 2020, the Supreme Court granted *certiorari* in *Facebook* to resolve the Circuit split on "whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator'"—***the exact issue that served as the basis for Edible's initial request to stay, which this Court properly granted***. Order, *Facebook*, No. 19-511, 2020 WL 3865252, at *1 (U.S. July 9, 2020); Ex. A (Supp. Br. For Pet'r, *Facebook*, No. 19-511 (filed July 7, 2020) (renewing request for review following *AAPC*)) & Ex. B (Pet. for Writ of Cert, *Facebook*, No. 19-511 (filed Oct. 17, 2019)); Dkt. 105 (discussing divide between courts regarding proper definition of ATDS and explaining why a decision that an ATDS means exactly what the statute says—a system that employs a random or sequential number

generator—will likely dispose of this action). In making this determination, the Supreme Court will effectively decide whether to reverse the Second Circuit's decision in *Duran*, as the Second Circuit followed the Ninth Circuit on this issue. Thus, *Facebook* will determine whether Plaintiff has any plausible claim in this case that Edible's texts were sent with an ATDS.

## III.     LEGAL ARGUMENT

### A.     The Definition of ATDS Is Unsettled Nationwide.

Among other things, the TCPA prohibits calling a cellular telephone with an ATDS without the called party's consent. 47 U.S.C. § 227. An ATDS is defined as "equipment which has the capacity -- to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1). The FCC purported to interpret this statutory definition in various orders. *ACA Int'l*, 885 F.3d at 693-94 (summarizing FCC's treatment of ATDS in its various orders). But in March 2018, the D.C. Circuit vacated the FCC's interpretations of what constitutes an ATDS as arbitrary, capricious, and overbroad.[2] *Id.* at 701. This left a vacuum of authority and called into question pre-2018 cases addressing that issue, given that most of those cases were decided based on the now-vacated FCC guidance.

In that vacuum, courts across the country have reached inconsistent conclusions on what functionalities render a calling or messaging system an ATDS. *See, e.g.*, *Duran*, 955 F.3d at 281, n.5 (collecting circuit-level cases). The Second, Sixth, and Ninth Circuits adopted a broad interpretation, straying from the statutory definition to manufacture their own, concluding that a system that can simply "make calls from stored lists" qualifies as an ATDS. *See Allan v. Penn.*

---

[2] *ACA Int'l*, 885 F.3d at 702 (holding FCC's 2015 Order's interpretation of ATDS was "unreasonably, and impermissibly, expansive" and that the "Commission reaffirmed its 2003 ruling insofar as that order had found predictive dialers to qualify as ATDSs."); *see also id.* ("We must therefore set aside the Commission's treatment of those matters," including the "lack of clarity about which functions qualify a device as an autodialer.").

*Higher Ed. Assis. Ag.*, --- F.3d ---, 2020 WL 4345341, at *9 (6th Cir. July 29, 2020); *Duran*, 955 F.3d at 287; *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1051 (9th Cir. 2018) (expressly rejecting "a straightforward interpretation based on the plain language" of the TCPA). The Third, Seventh, and Eleventh Circuits held otherwise, adopting the statutory definition of an ATDS, holding that equipment must employ a "random or sequential number generator" to qualify as an ATDS. *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 469 (7th Cir. 2020) (rejecting *Marks*'s interpretations of ATDS, which involved "a significant judicial rewrite" of the statute); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1311-12 (11th Cir. 2020) (Ninth Circuit's reading of the statute "looks more like surgery . . . than interpretation"); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018) ("key" question is whether the equipment "had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers").[3]

Now, the Supreme Court will finally resolve the ever-widening Circuit split and rule on what technology constitutes an ATDS. Proceeding in the current unsettled legal landscape, before the Supreme Court weighs in, has real world consequences, as there is no statutory cap on damages under the TCPA, so it can and has led to ruinous, company-ending liability for defendants to the tune of many hundreds of millions of dollars (as well as crushing defense costs). *See, e.g.*, *McMillion v. Rash Curtis & Assoc.*, No. 4:16-CV-03396-YGR (N.D. Cal. May 4, 2020) (judgment awarding class damages for TCPA violations in amount of $267,349,000).

---

[3] Other lower courts outside of the above-referenced Circuits have issued more than seven different conclusions on what constitutes an ATDS, although district courts have been strongly trending toward a narrower definition that adheres to the language of the statute. *See*, *e.g.*, *Smith v. Truman Road Development, LLC*, No. 4:18-cv-00670-NKL, 2020 WL 2044730, at *5 (W.D. Mo. Apr. 28, 2020) ("The Court finds that the best reading of the plain text of the ATDS definition indicates that a system must include a random or sequential number generator.").

### B. The Supreme Court Will Imminently Rule on the Scope of an ATDS.

This uncertainty will soon end, as the Supreme Court is set to rule on the definition of an ATDS in *Facebook*. In that case, the lower court granted the defendant's motion to dismiss, holding that the plaintiff failed to meet his burden to properly plead that he received text messages from a device with "the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." *Duguid v. Facebook, Inc.*, No. 15-CV-00985-JST, 2016 WL 1169365, at *5-6 (N.D. Cal. Mar. 24, 2016). In doing so, the court focused on the plaintiff's allegations suggesting that "Facebook's login notification text messages [we]re targeted to specific phone numbers and [we]re triggered by attempts to log in to Facebook accounts associated with those phone numbers." *Id.* at *5. The Ninth Circuit reversed, holding that "an ATDS need not be able to use a random or sequential generator to store numbers—it suffices to merely have the capacity to 'store numbers to be called' and 'to dial such numbers automatically.'" *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1151 (9th Cir. 2019) (reaffirming its decision in *Marks* that a system sending messages to a list of stored numbers is an ATDS). The defendant appealed to the Supreme Court to resolve the Circuit split over whether "the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" Question Presented Report at Ex. B. Thus, in *Facebook*, the Supreme Court is set to imminently determine the correct interpretation of ATDS, with Facebook's brief due September 4, 2020, and respondent's due October 16, 2020. No. 19-511, *Facebook v. Duguid*, https://www.supremecourt.gov/docket/docketfiles/html/public/19-511.html (last visited August 14, 2020).

8

## C. The Forthcoming Supreme Court Ruling Defining the Scope of an ATDS Could Dispose of Plaintiff's Entire Action.

While it is not certain how the Supreme Court will interpret ATDS, this determination is critical to this case, will be binding, and will either dispose of or fundamentally shape this litigation because Plaintiff's entire action depends on the definition of ATDS. *See* Dkt. 1, ¶ 19-20. For example, the Supreme Court could rule in line with Third, Seventh, and Eleventh Circuits and hold that an ATDS means exactly what the statute says: a system that employs a random or sequential number generator. If that occurs, the Second, Sixth, and Ninth Circuit rulings—that equipment constitutes an ATDS if it simply stores numbers to be called and then calls them—will fall. And system used to send the messages alleged in the Complaint will not qualify as an ATDS, because it did not have the capacity to generate random or sequential numbers. Edible Decl. at Ex. C, ¶ 3. Instead, like the messages in *Facebook*, the system was used to target specific individuals at specific phone numbers for specific business purposes. Ex. C, ¶ 4. Thus, the Supreme Court's forthcoming decision is likely to be dispositive as to Plaintiff's entire action and will, at the very least, materially shape and substantially streamline this case, including fact and expert discovery and related motion practice.

## D. If the Court Denies Edible's Motion for Judgment on the Pleadings or Motion to Transfer, It Should Stay the Case Pending the Supreme Court's Forthcoming Ruling on the ATDS Issue.

Given the above, if the Court denies Edible's motion for judgment on the pleadings and motion to transfer, it should stay this case pending *Facebook*. The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Thus, a district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). In

9

this Circuit, the "decision whether to stay an action calls on a district court's 'studied judgment,' requiring the court to examine 'the particular facts before it' and determine 'the extent to which . . . a stay would work a hardship, inequity, or injustice to a party, the public or the court.'" *Range v. 480-486 Broadway, LLC*, 810 F.3d 108, 113 (2d Cir. 2015) (quoting *Louis Vuitton Malletier S.A. v. LY USA, Inc.,* 676 F.3d 83, 99 (2d Cir. 2012)). In making this determination, courts in this Circuit consider five factors:

> (1) the private interests of the plaintiff in proceeding expeditiously balanced against the prejudice to him if the litigation is delayed, (2) the private interests of and burden on the defendants, (3) the interests of the courts, (4) the interests of non-parties, and (5) the public interest.

*Tyus v. Semple*, No. 3:19-CV-73-VAB, 2020 WL 1083603, at *2 (D. Conn. Mar. 6, 2020); *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (cits. omitted).

### 1. Courts Routinely Stay Rulings Pending Guidance from the Supreme Court.

Applying these factors under the *Landis* doctrine, courts within this Circuit, including this Court, routinely stay proceedings "when a higher court is close to settling an important issue of law bearing on the action." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012); Dkt. 106 (staying case pending decision from Second Circuit); *In re Literary Works in Elec. Databases Copyright Litig.*, No. 00-cv-6049, 2001 WL 204212, at * 3 (S.D.N.Y. Mar. 1, 2001) (granting stay where forthcoming Supreme Court decision was "likely to have a significant, if not dispositive, impact"); *Jugmohan v. Zola*, No. 98-CV-1509, 2000 WL 222186, at *5 (S.D.N.Y. Feb. 25, 2000) (postponing case "pending an upcoming decision by the United States Supreme Court is a practice exercised by the Second Circuit in the interest of judicial economy"); *see also Acton v. Intellectual Capital Mgmt., Inc.*, No. 15-CV-4004, 2015 WL 9462110, at *2 (E.D.N.Y. Dec. 28, 2015) (staying TCPA case pending outcome of Supreme Court and D.C. Circuit appeals, including *ACA Int'l*); *Ruggieri v. Boehringer Ingelheim Pharm., Inc.*, No. 06-CV-1985, 2012 WL

1521850, at *1 (D. Conn. Feb. 24, 2012) (staying proceeding pending Supreme Court ruling that would "conclude this case").

Indeed, even in the few weeks since the Supreme Court granted certiorari in *Facebook* on July 9, many courts have already stayed actions pending a ruling in that case for this very reason. *See, e.g., Meier v. Allied Interstate, LLC*, No. 20-CV-55286 (9th Cir. Aug. 11, 2020) (staying appeal based on Supreme Court's decision in *Facebook*); *Bittner v. Subway Franchisee Advertising Fund Trust, Ltd.*, No. 3:20-CV-00522 (D. Conn. Aug. 11, 2020) (same); *Boger v. Citrix Sys., Inc.*, No. 8:19-CV-01234 (D. Md. Aug. 4, 2020); *Runyon v. Everquote, Inc.*, 1:20-CV-01206 (D. Colo. July 23, 2020) (same); *Blower v. Portfolio Recovery Assoc.*, No. 3:19-CV-2270 (S.D. Cal. July 23, 2020); *Beal v. Outfield Brew House, LLC*, No. 20-CV-1961 (8th Cir. July 14, 2020) (same); *Grome v. USAA Sav. Bank*, No. 4:19-CV03080 (D. Neb. July 14, 2020) (same); *Hoffman v. Jelly Belly Candy Co.*, No. 2:19-CV-01935 (E.D. Cal. July 17, 2020) (same); *Young v. Bank of Am. N.A.*, No. 4:19-CV-03867 (N.D. Cal., July 15, 2020) (same); *May v. Whatsapp, Inc.*, No. 4:20-CV-659 (N.D. Cal. July 15, 2020) (same); *Rossano v. Fashion Mktg. and Merch. Grp., Inc.*, No. 2:19-CV-10523 (C.D. Cal. July 14, 2020) (same); *Sensibaugh v. EF Educ. First, Inc.*, No. 2:20-CV-01068 (C.D. Cal. July 14, 2020) (same).

There is no reason why this Court should not similarly stay this action. The highest Court is close to settling a critical and dispositive issue of law on which this case entirely turns. Should that ruling establish that the system here is not an ATDS, Plaintiff's entire action will fail in whole, and the complicated, expensive, and burdensome class discovery related to Plaintiff's ATDS claim will be unnecessary.

### 2. All Relevant Factors Weigh in Favor of a Stay Pending *Facebook*.

Here, all relevant factors favor a stay pending *Facebook*. A stay would not work to any injustice or hardship on any party. As to the first *Landis* factor, courts consistently hold that there

is no likelihood of damage or harm under this factor merely because the stay could cause a delay to the plaintiff in receiving money damages. *See*, *e.g.*, *Aerotel, Ltd. v. IDT Corp.*, No. 03-CV-6496-RJH-FM, 2003 WL 23100263, at *2 (S.D.N.Y. Dec. 30, 2003) (granting stay and holding no undue prejudice where "suit is largely one for damages"); *see also Compressor Eng'g Corp. v. Thomas*, No. 10-10059, 2016 WL 438963, at *6 (E.D. Mich. Feb. 3, 2016) (staying action based on Supreme Court's TCPA decision where plaintiff claimed to have suffered emotional distress as result of calls, noting "that a stay in this action is not likely to prejudice or harm Plaintiff"). The same is true for passing, conclusory requests to enjoin violations of the TCPA. *Whittaker v. All Reverse Mortg.*, No. 20-CV-08016, 2020 WL 2829785, at *1 (D. Ariz. May 29, 2020) (staying TCPA case notwithstanding request for injunctive relief); *Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*, 630 F. Supp. 2d 295, 307 (S.D.N.Y. 2009) (staying case notwithstanding request for injunctive relief). For these reasons, a stay will not prejudice Plaintiff.

On the other hand, as to the second and third *Landis* factors, not staying the case would work substantial prejudice on Edible, as well as this Court. If this case is not stayed, Edible will have to invest substantial resources litigating this matter—and the Court will have to invest substantial judicial resources policing it—based on the potentially wrong definition of ATDS, in the middle of a pandemic despite the high possibility that the Supreme Court will render all such investment unnecessary. There is no reason to incur these expenses when a stay will clarify an issue critical to Plaintiff's entire action. *See, e.g.*, *Lacy v. Comcast Cable Commc'ns*, LLC, No. 3:19-CV-05007-RBL, 2020 WL 2041755, at *2 (W.D. Wash. Apr. 28, 2020) (staying case pending Supreme Court's First Amendment TCPA decision to prevent the defendant from "needlessly spending time and money to comply with [] broad discovery requests"); *Boger v. Citrix Sys.*, Inc., No. 8:19-CV-01234, 2020 WL 1939702, at *2 (D. Md. Apr. 22, 2020) (staying case pending

Supreme Court's First Amendment TCPA decision to "conserve[] precious judicial and case resources and avoid[] unnecessary expenditure of time and money on discovery for a cause of action that may ultimately be invalidated"); *Rezko v. XBiotech Inc.*, No. 17-CV-00734-SS, 2017 WL 4544683, at *1 (W.D. Tex. Oct. 6, 2017) (staying case to "conserve time and resources that could otherwise be undone"); *Errington v. Time Warner Cable Inc.*, No. 2:15-CV-02196, 2016 WL 2930696, at *4 (C.D. Cal. May 18, 2016) (in staying case pending D.C. Circuit's ruling on proper interpretation of ATDS, noting that "[i]f the case is not stayed, defendant may suffer hardship in conducting discovery and trial preparation"); *McArdle v. AT&T Mobility LLC*, No. 09-CV-1117-CW, 2010 WL 2867305, at *4 (N.D. Cal. July 20, 2010) (granting stay in light of forthcoming Supreme Court decision "[b]ecause the viability of prosecuting this case as a class action is in question, [and] it is not apparent that Defendants should bear this additional expense").[4] This is not merely theoretical, as Plaintiff already served overbroad class discovery that has already resulted in discovery disputes that this Court will soon have to police, should the case not be transferred, dismissed, or stayed. This is particularly the case, as this action was already rightly stayed for multiple years based on the unsettled definition of ATDS. As such, it defies logic to expend resources on this case at this juncture—while the highest court finally resolves that precise ATDS issue.

---

[4] *See also*, *e.g.*, *Nakai v. Charter Commc'ns, Inc.*, No. 19-CV-8035, 2020 WL 1908949, at *6 (C.D. Cal. Apr. 15, 2020) (staying case pending Supreme Court's TCPA decision because the defendant would otherwise "be required to spend additional resources defending against this putative nationwide class action that may ultimately be rendered moot by the decision"); *Figueroa v. Carrington Mortg. Servs. LLC*, No. 8:15-CV-2414, 2016 WL 718289, at *3 (M.D. Fla. Feb. 22, 2016) (staying TCPA action pending Supreme Court's decision in part to save "the parties from unnecessary discovery expenses"); *Salvatore v. Microbilt Corp.*, 4:14-CV-1848, 2015 WL 5008856, at *2 (M.D. Pa. Aug. 20, 2015) (staying case pending Supreme Court decision because "the parties face potential hardship if the stay were denied and the parties were required to expend time and resources engaging in fact and expert discovery" while the decision remains pending).

In fact, proceeding with this case before the forthcoming rulings would prejudice even Plaintiff because he would incur substantial expense and hassle in individual and class discovery that could end up being for naught. Thus, incurring the significant costs of class and expert discovery before the law is settled is inequitable and will waste the resources of both the parties and the Court, which will have to expend substantial resources deciding significant motions and policing discovery.

As to the fourth and fifth *Landis* factors, a stay would also promote the public interest because the public has a strong interest in the efficient, fair, and uniform administration of the judicial system. For instance, continuing without guidance from the Supreme Court on the correct interpretation of ATDS would sow even further confusion on how to comply with that Section of the TCPA. *See supra* III.A. Further, a stay would promote the interests of non-parties by preventing discovery that would unnecessarily burden them, and ensure a uniform interpretation of the law. Indeed, Plaintiff has already issued subpoenas to third parties that he is now pursuing. Dkts. 52-1, 55-1. Edible would also be forced to depose putative class members to show that class certification is improper, further burdening non-parties (and non-parties want to avoid appearing for a deposition in the middle of a pandemic). That can include many depositions of putative class members. Additionally, plaintiffs in putative TCPA class actions routinely serve subpoenas on cellular carriers that result in wide-ranging discovery disputes, statutory privacy implications that require detailed notice programs and oversight from the Court, deposition of custodians, and other significant legal costs and burdens to non-parties. *See, e.g.*, *See Royal Park Inv. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 17-CV-5916-AJN, 2018 WL 3849840, at *3 (S.D.N.Y. Aug. 10, 2018) (staying action pending resolution of related case because "the public is also not served by any wasting of judicial resources"); *Coulter v. Ascent Mortg. Res. Grp.,*

14

*LLC*, No. 2:16-CV-02237, 2017 WL 2219040, at *4 (E.D. Cal. May 18, 2017) (staying case pending forthcoming D.C. Circuit opinion on definition of ATDS because a "stay will conserve judicial resources, clarify the law, and aid the court in making a decision"); *Nuccio v. Duve*, No. 7:13-CV-1556-MAD-TWD, 2015 WL 1189617, at *5 (N.D.N.Y. Mar. 16, 2015) ("Staying this action [pending the outcome of a district court action involving similar issues] will serve the interest of the courts, non-parties, and the public by promoting the efficient use of judicial resources and 'minimiz[ing] the possibility of conflicts between different courts . . . .'").

In sum, by "conserving judicial resources, a stay will serve not only the interest of the courts, but also the interests of the [p]arties, the nonparties, and the public in 'an orderly and efficient use of judicial resources.'" *Catskill*, 630 F. Supp. 2d at 306; *Morris v. Wyeth, Inc.*, No. 09-CV-0854, 2011 WL 311009, at *2 (W.D. La. Jan. 27, 2011) ("To conserve the limited resources of the court and parties, the most efficient and prudent course is to stay fact and expert discovery pending the Supreme Court's resolution of this central issue."); *Ioina v. Brinker Intern. Payroll Co., LP*, 2010 WL 3219009, at *1 ("a stay is necessary to avoid conflicting judicial opinions and accrual of unnecessary attorney's fees pending the Fifth Circuit's decision"); *see also Boger*, 2020 WL 1939702, at *2 (noting that a brief stay would also be appropriate given the COVID-19 crisis, to preserve resources in discovery and judicial action, where any such action might be imminently invalidated); *In re Sprouts Farmers Market, Inc. Employee Data Security Breach Lit.*, No. 16-CV-02731, 2017 WL 3051243, at *3 (D. Ariz. May 24, 2017) (noting that "granting a stay may conserve resources which could be unnecessarily expended" where "the Supreme Court's [] decision may foreclose Plaintiffs' class claims"). Accordingly, all *Landis* factors weigh heavily in favor of a stay.

## IV. CONCLUSION

For the foregoing reasons, if the Court declines to transfer this case to Georgia or Florida or dismiss this case based on lack of subject matter jurisdiction, Edible respectfully asks the Court to stay these proceedings pending the forthcoming ATDS decision by the Supreme Court in *Facebook*.

Dated: August 17, 2020.                    Respectfully submitted,

By: */s/ Ryan D. Watstein*
Ryan D. Watstein (*admitted pro hac vice*)
Jessica D. Gallegos (*admitted pro hac vice*)
**KABAT CHAPMAN & OZMER LLP**
171 17th Street, NW
Suite 1550
Atlanta, GA 30363
T: (404) 400-7300
F: (404) 400-7333
rwatstein@kcozlaw.com
jgallegos@kcozlaw.com

and

Hugh F. Keefe
Marisa A. Bellair
Garrett A. Denniston
**LYNCH, TRAUB, KEEFE & ERRANTE**
52 Trumbull Street
P.O. Box 1612
New Haven, CT 06506
T: (203) 782-0275
F: (203) 782-0278
hkeefe@ltke.com
mbellair@ltke.com
gdenniston@ltke.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I certify that today I filed the foregoing using the Court's CM/ECF system, which will automatically send a notice of electronic filing to all counsel of record.

<div style="text-align: right">

*/s/ Jessica D. Gallegos*
Jessica D. Gallegos

</div>